UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80770-CIV-MARRA/JOHNSON

NATURE'S EARTH PRODUCTS, INC.,
a Florida corporation,

    Plaintiff,

vs.

PLANETWISE PRODUCTS, INC.,
an Arkansas corporation,

    Defendant.
_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Plaintiff's Motion to Dismiss Counts IV Through VII of Defendant's First Amended Counterclaim. (DE 45). The Motion is fully briefed and ripe for review. The Court has carefully considered the briefing and is otherwise fully advised in the premises.

## Background

Plaintiff Nature's Earth Products, Inc. markets Feline Pine® brand clumping cat litter, a feline litter product promoted as natural and chemical-free. First Amended Counterclaim ("FAC") ¶ 17. Defendant Planetwise Products, Inc. is one of Plaintiff's competitors in the natural-litter market. FAC ¶ 50.

1

On May 21, 2009, Plaintiff initiated this action, alleging that Defendant's litter product embodied Plaintiff's patented method of production. (DE 1). Plaintiff's complaint has since been voluntarily dismissed. (DE 64).

On March 15, 2010, Defendant filed its First Amended Counterclaim, in which Defendant asserts eight claims against Plaintiff. (DE 43). Defendant's counterclaims include alleged violations of the Lanham Act, 15 U.S.C. § 1125(a) (Count IV), misleading advertising under Florida Statute § 817.401 (Count V), unfair competition under Florida common law (Count VI), and violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (Count VII). FAC ¶¶ 50-77.

The crux of these counterclaims is that Plaintiff's marketing campaign for its natural-litter product is false and deceptive. Defendant alleges that Plaintiff's brand is "based upon an image of healthiness, purity, and wholesomeness." FAC ¶ 17. Plaintiff's advertising and packaging allegedly promote its natural-litter product's "chemical-free [and] additive-free composition." FAC ¶ 17. Defendant contends that these representations are false. FAC ¶ 17. Specifically, Defendant claims that Plaintiff's purportedly chemical-free litter product in fact contains the chemical polyacrylamide. FAC ¶¶ 17, 51-52. This deceptive marketing, Defendant argues, has harmed Plaintiff's competitors, including Defendant. FAC ¶ 56.

Plaintiff now moves to dismiss Defendant's counterclaims, arguing that Defendant lacks prudential standing to assert a false-advertising claim under the Lanham Act. Plaintiff further argues that because Defendant's Lanham Act counterclaim fails, Defendant's three state-law counterclaims—premised on the same facts underlying the Lanham Act counterclaim—must be dismissed for lack of pendent jurisdiction.

**Legal Standard**

Rule 8(a) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the plaintiff's claim is . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.  When considering a motion to dismiss for failure to state a claim, the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal quotation marks omitted).

**Discussion**

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  Standing jurisdiction is

comprised of "two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Id.* at 11-12 (internal quotation marks and citation omitted).

### *Constitutional Standing*

While Plaintiff does not dispute Defendant's constitutional standing to assert its counterclaims, constitutional standing is jurisdictional and the Court must therefore address it at the outset. *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1161 (11th Cir. 2007). To demonstrate constitutional standing, the claimant must "allege that (1) he has suffered an actual or threatened injury, (2) the injury is fairly traceable to the challenged conduct . . . and (3) the injury is likely to be redressed by a favorable ruling." *Id.*

Here, Defendant's only allegation of an injury is the conclusory statement, "[Defendant] has been injured as a result of [Plaintiff's] deceptive, false, fraudulent, and misleading advertisements, marketing, and promotion, thereby resulting in damages to [Defendant]." FAC ¶ 56. This is not enough to satisfy the first two prongs of the constitutional standing inquiry, i.e., injury fairly traceable to Plaintiff's conduct.

While Defendant need not plead injury with great detail, it must at least allege some factual matter supporting a reasonable inference that Defendant was injured by Plaintiff. *See Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Here, Defendant has alleged no facts regarding the nature or cause of its alleged injury. Rather, Defendant's allegation is a simple conclusion that the injury element of a

Lanham Act cause of action has been satisfied.  Under the Supreme Court's interpretation of the requisite pleading standard, Defendant's conclusory allegation will not do.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Defendant's response memorandum argues that Plaintiff's "activities have directly lowered [Defendant's] sales and profits [because] purchasers are selecting [Plaintiff's] cat litter products, rather than [Defendant's] products, as a result of [Plaintiff's] advertising."  Def.'s Resp. at 11.  Were this properly alleged, this factual allegation of lost sales and diverted customers may satisfy the first two requirements of constitutional standing for a Lanham Act claim.  *See, e.g.*, *Phoenix of Broward*, 489 F.3d at 1161-62 (holding that the complaint properly alleged an injury fairly traceable to the defendant based on the allegation that as a "'result of [the defendant's] false advertising and unfair competition, customers were diverted from [the plaintiff], who accordingly not only lost profits due, *inter alia*, to reduced sales, but also incurred costs in connection with common counteractive efforts to retain those customers.'"); *Furniture "R" Us, Inc. v. Leath Furniture, LLC*, No. 07-23321, 2008 WL 4444007, at *2 (S.D. Fla. Sept. 26, 2008) (holding that the plaintiff properly pled constitutional standing where "Plaintiff allege[d] in the complaint that the Defendant's advertisements had the capacity to deceive customers, who were diverted to [other] stores to Plaintiff's detriment.").  However, the Court's review here is limited to the allegations in Defendant's First Amended Counterclaim.  *See, e.g.*, *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (when evaluating a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint.");

*Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1347 n.5 (11th Cir. 1999) ("[W]hen considering a motion to dismiss for failure to state a claim, [the court] may only look to the facts alleged in the complaint and not beyond.").

Accordingly, based on the allegations in the First Amended Counterclaim, the Court concludes that Defendant lacks constitutional standing to pursue a false-advertising claim under the Lanham Act. The Court will, however, grant Defendant leave to amend its First Amended Counterclaim to properly allege an injury in fact, traceable to Plaintiff's false advertising, that is redressable by a favorable ruling.

### *Prudential Standing*

The Court also finds that Defendant lacks prudential standing to pursue a Lanham Act false-advertising claim against Plaintiff. A Lanham Act false-advertising claim arises when "[a]ny person who, on or in connection with any goods . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another persons goods[.]" 15 U.S.C. § 1125(a). In a matter of first impression, the Eleventh Circuit recently held that "Congress did not intend to abrogate prudential standing limitations when it enacted the Lanham Act." *Phoenix of Broward*, 489 F.3d at 1163. In the same decision, the Eleventh Circuit adopted a five-part test to determine whether a party has prudential standing to bring a false-advertising claim under the Lanham Act:

(1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the [Lanham Act]?

(2) The directness or indirectness of the asserted injury.

  (3)  The proximity or remoteness of the party to the alleged injurious conduct.

  (4)  The speculativeness of the damages claim.

  (5)  The risk of duplicative damages or complexity in apportioning damages.

*Id*. at 1163-64 (alteration in original). The five-prong test "is designed to determine whether the injury alleged is the type of injury that the Lanham Act was designed to redress—harm to the [claimant's] ability to compete in the marketplace and erosion of the [claimant's] good will and reputation that has been directly and proximately caused by the . . . false advertising." *Id.* at 1167 (internal quotation marks omitted).

  Prong one requires the Court to evaluate the nature of Defendant's alleged injury. "[T]he focus of § 43(a) is on protecting commercial interests [that] have been harmed by a competitor's false advertising, and in secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." *Id.* at 1168 (internal quotation marks omitted). Typically, the competitive harm in a Lanham Act false-advertising case is diversion of the claimant's customers and the concomitant lost profits. *Natural Answers, Inc. v. Smithkline Beecham Corp.*, 529 F.3d 1325, 1331 (11th Cir. 2008); *Phoenix of Broward*, 489 F.3d at 1168. As discussed above, Defendant here has pleaded no facts describing the nature of its alleged injury. Thus, based on Defendant's allegations, the Court cannot conclude that Defendant's purported injury is the type of commercial harm that "Congress sought to redress" through the Lanham Act. *Phoenix of Broward*, 489 F.3d at 1163-64. Accordingly, the first factor balances against prudential standing.

  The second prong requires the Court to examine the "directness" with which Plaintiff's false advertising affected Defendant's commercial interests. This is a causation requirement,

7

such that the claimant must allege a "causal chain" between its commercial harm and the alleged false advertising. *Id.* at 1169; *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 461 (5th Cir. 2001) (holding that the second factor counseled in favor of prudential standing where the plaintiff alleged that the defendant's "false advertising about its own goods influenced its customers to buy its product instead of [the plaintiff's] product."). Where "there is no direct relationship between [the defendant's] conduct and the claimed injury," the second factor weighs against prudential standing. *Natural Answers*, 529 F.3d at 1332. Again, Defendant's failure to allege facts regarding the nature and cause of its alleged injury precludes any determination that Plaintiff's false advertising directly harmed Defendant's commercial interests. Thus, the second factor balances against prudential standing.

The third step requires the Court to examine the proximity of Defendant to the allegedly harmful conduct. In evaluating this factor, the Court must determine "whether there is an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest by bringing a suit." *Phoenix of Broward*, 489 F.3d at 1170 (internal quotation marks omitted). "The existence of such a class diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." *Id.* (internal quotation marks omitted). This inquiry focuses on whether other "commercial entities" are the more appropriate parties to vindicate the competitive harm wrought by the alleged misconduct. *Id*. Consumers who were lured by the allegedly false advertising are not relevant to this analysis because such a class cannot assert a commercial or competitive injury as required by the Lanham Act. *Id.* at 1170-71.

The most appropriate entities to bring a false-advertising suit under the Lanham Act are competitors who lost customers and, in turn, lost profits as a direct result of Plaintiff's alleged false advertising. *See id.* at 1171; *Furniture "R" Us*, 2008 WL 4444007 at *4. Defendant, though a competitor, does not allege a recognizable injury or a link between its purported harm and Plaintiff's conduct, and therefore Defendant does not fall into this class. Accordingly, Defendant has not alleged the requisite proximity to Plaintiff's false advertising, and the third factor weighs against prudential standing.

The fourth prong requires the Court to examine the speculative nature of Defendant's alleged damages. Defendant demands actual and treble damages "suffered by reason of [Plaintiff's] false advertising" and disgorgement of "all profits of [Plaintiff] as derived from the false advertising." FAC at 20. With respect to actual and treble damages, it would require too much conjecture to apportion the amount of alleged damages attributable to Plaintiff's false advertising. Defendant does not allege how it was harmed, and therefore its entitlement to any damages from Plaintiff, and in what amount, is pure speculation. Although "general factual allegations of injury resulting from [Plaintiff's] conduct *may* suffice to support standing at the pleading stage, to presume that [Defendant's] allegations embrace those specific facts that are necessary to support its claim to an appropriate share of [Plaintiff's] profits from the [false advertising] requires too much conjecture." *Phoenix of Broward*, 489 F.3d at 1171 (internal quotation marks omitted) (emphasis in original).

Defendant's demand for disgorgement of Plaintiff's ill-gotten gains is also overly speculative. Discerning the portion of Plaintiff's profits derived from deceived customers versus sales to customers who would have purchased Plaintiff's litter product irrespective of the

9

challenged advertisements would be highly speculative, if not wholly unworkable. *See Furniture "R" Us*, 2008 WL 4444007 at *5 ("How can the Court or a jury discern what portion of [the Defendant's] revenue during the sale were the direct result of the deceptive advertising versus what was earned legitimately?  Undoubtedly, accounting for the Defendants' 'illegitimately' earned profits would require conjecture.").  Thus, because Defendant's alleged damages are overly speculative, the fourth factor weighs against prudential standing.

The fifth and final factor requires the Court "to assess the risk of duplicative damages *or* the complexity of apportioning damages." *Phoenix of Broward*, 489 F.3d at 1172 (emphasis in original).  Courts applying this factor have assessed the risk of duplicative damages by examining the "number of potential claimants . . . in the same market as the plaintiff." *Id.*  In *Logan*, the Fifth Circuit determined that the fifth factor weighed in favor of prudential standing where there was only one competitor that could bring a Lanham Act false-advertising claim, as the risk of duplicative damages was minimal.  263 F.3d at 461.  By contrast, the Fifth Circuit in *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001), determined that the fifth prong counseled against prudential standing where "every competitor in the market [could] sue" the defendant if the plaintiff were granted standing.  *Id.* at 564; *see also Phoenix of Broward*, 489 F.3d at 1172-73 (discussing with approval the Fifth Circuit's rulings in *Logan* and *Proctor & Gamble*).

This case is more akin to *Proctor & Gamble* than *Logan*, as every competitor in the natural-litter market could sue Plaintiff if Defendant were granted prudential standing here.  Although Defendant does not allege the number of firms in the natural-litter market, the First Amended Counterclaim acknowledges that there are multiple competitors.  *See, e.g.*, FAC ¶ 17

(alleging that Plaintiff's false advertising "has economically damaged its *competitors*, including the Defendant") (emphasis added).  And because Defendant fails to allege anything unique about its alleged competitive harm from Plaintiff's false advertising—for example, that the advertisements were directed towards Defendant or Defendant's customer base—all competitors could sue under the Lanham Act if Defendant is granted prudential standing.  The risk of duplicative damages is clear.  Moreover, if every "competitor had standing to bring such a claim, regardless of the amount in controversy, regardless of the amount of lost sales or market share directly attributable to the falsity of the advertisement, and regardless of the impact on the competitor's goodwill or reputation (as the advertisements made no mention of any competitor), . . . apportioning damages among these competitors would be a highly complex endeavor." *Phoenix of Broward*, 489 F.3d at 1172.  Thus, due to the risk of duplicative damages and the complexity in apportioning such damages, the fifth factor weighs against a finding of prudential standing.

Last, the Court must weigh the totality of the five factors to determine whether the allegations balance in favor of prudential standing.  *Id.* at 1173.  Because every factor counsels against prudential standing, the Court finds that Defendant lacks standing to assert its counterclaim under § 43(a) of the Lanham Act.

In so holding, the Court says nothing about the outcome of this analysis if Defendant can allege additional facts to cure the deficiencies of the First Amended Counterclaim.  As the Eleventh Circuit explained in *Phoenix of Broward*, "a salient virtue of [this] test is that it provides a flexible yet principled means of determining the existence of prudential standing for disparate factual scenarios, thereby allowing courts to foreclose standing on one set of facts while

11

recognizing standing when presented with a slightly (but materially) different set of facts." 489 F.3d at 1173. Accordingly, the Court will allow Defendant leave to amend, if it in good faith can do so, to allege facts supporting standing to assert a false-advertising claim under the Lanham Act. Any new allegations should assert a recognizable injury, such as lost sales, that results directly from Plaintiff's alleged false advertising. Defendant should also allege, if it can, that its damages would not be duplicative and apportionment not overly complex, for example by alleging harm unique to Defendant vis-a-vis other natural-litter competitors.

*Supplemental Jurisdiction Over Defendant's State-Law Counterclaims*

Plaintiff also argues that because Defendant's Lanham Act counterclaim fails, the Court should decline to exercise pendent jurisdiction over Defendant's Florida law counterclaims (Counts V, VI, and VII), which are premised on the same allegations. Because the Court is allowing Defendant leave to amend to cure the deficiencies in its Lanham Act counterclaim, the Court will deny the motion to dismiss the three related Florida law claims. This denial is without prejudice to Plaintiff reasserting these arguments in a subsequent motion to dismiss the amended counterclaims.

**Conclusion**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that

1. Plaintiff's Motion to Dismiss Counts IV Through VII of Defendant's First Amended Counterclaim (DE 45) is **GRANTED IN PART AND DENIED IN PART**.

2. Count IV of Defendant's First Amended Counterclaim is **DISMISSED WITHOUT PREJUDICE**. Defendant is granted leave to amend the First Amended Counterclaim

consistent with the directives in this Order.  Defendant shall file its Second Amended Counterclaim, if it chooses, within twenty (20) days of the date of entry of this Order.

3. The Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion as it relates to Counts V, VI, and VII.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of October, 2010.

_____
KENNETH A. MARRA
United States District Judge

Copies to:
Counsel of record